**UNITED STATES of America, ex rel. James S. STONE, Plaintiff,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, Defendant.**

**Civ. A. No. 89–C–1154.**

United States District Court, D. Colorado.

Sept. 21, 1992.

Michael Gilbert, Steven D. Plissey, Robert E. Youle, Michael Williams, Denver, Colo., for defendant.

Gerald McDermott, Denver, Colo., William Gray, Boulder, Colo., Scott Lord, Paul Leevan, Los Angeles, Cal., Harley Alley, Wheat Ridge, Colo., for plaintiff.

## MEMORANDUM OPINION AND ORDER OF UNITED STATES MAGISTRATE JUDGE

PRINGLE, United States Magistrate Judge.

This matter is before the Court on Defendant Rockwell's Second Motion to Compel Responses to Request for Production Nos. 5 and 6 (*hereinafter* the Motion to Compel). A Special Order of Reference was entered on May 27, 1992, referring all discovery disputes to me for resolution. The Court has reviewed the briefs, has heard oral argument, and has conducted an *in camera* inspection of the document in question. For the reasons discussed below, the Motion to Compel is GRANTED.

### I. Introduction

This is a *qui tam* action in which Plaintiff Stone, on behalf of the United States, seeks to recover substantial sums from defendant Rockwell under the False Claims Act, 31 U.S.C. § 3729 *et seq*. In essence, the complaint alleges that during its operation of the Department of Energy facility at Rocky Flats pursuant to contracts with the government, Rockwell committed numerous violations of Department of Energy orders, environmental laws of the state of Colorado, federal environmental and safety laws, and agreements relating to plant operations. The complaint further claims that Rockwell concealed these violations from the government and made misrepresentations in order to secure payments and in order to insure continuation of its government contracts.

The sole remaining issue raised by the Motion to Compel is the failure of plaintiff Stone to provide Rockwell with a copy of the Confidential Disclosure Statement which he served on the government pursuant to 31 U.S.C. § 3730(b)(2). Plaintiff's written response to the Motion to Compel is less than enlightening on the specific bases for his refusal to produce the Disclosure Statement. During oral argument, however, plaintiff's counsel argued that production was prohibited by the False Claims Act, and, in addition, counsel referred to the attorney-client privilege, the immunity afforded to work product, the regulatory privilege, and the investigatory files privilege.

### II. The False Claims Act

The federal False Claims Act was amended in 1986 to encourage private enforcement suits. Section 3730(b) of Title 31 establishes a procedure to afford the government an initial opportunity to commence an action. Thus, a private party having knowledge of violations of the False Claims Act initially must serve upon the government a copy of the complaint and a written disclosure of substantially all material evidence and information the person possesses. The statute mandates that the complaint remain sealed for a period of sixty days while the government determines whether it will undertake the prosecution of the case. If the government elects not to proceed, the private party who brings the matter to the government's attention may then conduct the action on behalf of the United States.

Plaintiff contends that 31 U.S.C. § 3730 provides a cloak of confidentiality to the written disclosure statement and, thus, creates a statutory prohibition against its production to the defendant. There is nothing in the language of the statute to support such a position. The sole reference in 31 U.S.C. § 3730 to any prohibition against disclosure is directed to the complaint and is limited to the sixty-day period, or any extension thereof, in which the government considers whether to prosecute the suit. Even if the term "complaint," as contained

in the statutory phrase "the complaint shall be filed in camera, [and] shall remain under seal for at least 60 days," can be read as including the written disclosure, there is no provision in the statute for withholding any materials submitted to the government beyond the sixty days or any court-ordered extensions.

Further, it is clear that any statutory prohibition of the type espoused by plaintiff would serve no practical purpose and would be obstructive to the efficient prosecution of *qui tam* actions under the False Claims Act. Once the government makes an election and the case goes forward, fundamental fairness dictates that the plaintiff must disclose to the defendant the factual basis for the suit. At that point, no legitimate reason exists for preserving the confidentiality of the written disclosure statement, since it contains nothing more than the evidence and information which must come to light in any event once the case proceeds.

## II. Attorney-client privilege

The attorney-client privilege applies if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358 (D.Mass. 1950).

The underlying purpose for the attorney-client privilege "is to encourage full and frank client disclosure by securing a cloak of confidentiality, thereby aiding the proper functioning of the adversary system." 4 Moore's Federal Practice § 26.-60[2]. See also *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The privilege is to be strictly construed. *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir.1977). It is to be extended no more broadly than necessary to effectuate its purpose. *Cohen v. Uniroyal, Inc.*, 80 F.R.D. 480, 483 (E.D.Pa.1978).

The document claimed to fall within the scope of the privilege is a recitation of facts and allegations communicated by plaintiff Stone to the government for purposes of complying with the statutory conditions precedent to Stone's prosecution of the instant suit. The document was apparently prepared by Stone's attorney, since it is substantially in the form of a pleading and contains counsel's signature at the end.

It is apparent that the Disclosure Statement in many respects fails to meet the criteria necessary to bring it within the scope of the privilege. First, the communication by Stone to his counsel of the facts and information contained in the Disclosure Statement was not for the purpose of securing legal advice. Rather, the information was provided to counsel so that it could be reduced to written form and submitted to the government. In essence, counsel merely acted as a conduit in taking factual material supplied by the client and relaying that material to the government in the form of the Disclosure Statement. Thus, the situation here presented is comparable to that involved when a client communicates factual data to an attorney for inclusion in a patent or trademark application. Several courts have held that such communication between patent attorney and client is not privileged. *E.g., McNeil–PPC, Inc. v. Procter & Gamble Co.*, 136 F.R.D. 666 (D.Colo.1991); *Jack Winter, Inc. v. Koratron Co.*, 50 F.R.D. 225 (N.D.Cal.1970); *Underwater Storage, Inc. v. United States Rubber Co.*, 314 F.Supp. 546 (D.D.C.1970).

Second, there is no requirement in 31 U.S.C. § 3730 that the written disclosure be prepared by an attorney. Indeed, the statute speaks of "written disclosure of substantially all material evidence and in-

formation *the person* possesses...." 31 U.S.C. § 3730 (*emphasis added*). A claim of attorney-client privilege would not be appropriate if the Disclosure Statement had been prepared by Stone, because the communication would not have involved a member of the bar. The fact that Stone chose to channel the information through his counsel, rather than provide it to the government directly, cannot provide a basis for invoking the privilege. *See Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314, 324 (7th Cir.), *cert. denied,* 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963); *Ashland Oil, Inc. v. Delta Oil Prod. Corp.,* 209 U.S.P.Q. 151, 152 (E.D.Wis.1979); *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,* 61 F.R.D. 653, 658 (D.P.R.1974).

■ Third, communications to counsel are privileged only when made for the purpose of obtaining legal advice. *United States v. Davis,* 132 F.R.D. 12, 15 (S.D.N.Y.1990). "The fact alone that a party has communicated information to its attorney does not prevent discovery of the factual information." *American Standard, Inc. v. Bendix Corp.,* 80 F.R.D. 706, 709 (W.D.Mo.1978). Here, the information communicated by Stone to his counsel was simply incorporated into the Disclosure Statement and turned over to the government. There is no indication that the Disclosure Statement has any nexus to the providing of legal advice or that it was prepared in connection with advising the client on legal matters.

■ Finally, and perhaps most important, the privilege only covers those communications which are intended to be confidential. Where there is no expectation that the information conveyed will be kept confidential, the basis for affording it protection under the attorney-client privilege is absent. *United States v. Rockwell Int'l,* 897 F.2d 1255, 1265 (3d Cir.1990); *Permian Corp. v. United States,* 665 F.2d 1214, 1220 (D.C.Cir.1981); *United States v. Bump,* 605 F.2d 548, 551 (10th Cir.1979). There can be no doubt that the information and facts contained in the Disclosure Statement comprise much of what the plaintiff will rely upon to support the contentions in the case at bar. Mr. Stone clearly knew that the factual data communicated to his attorney was not for "counsel's eyes only." It was apparent that it would be passed on to the government, and then utilized by either the government or Stone as a basis for the instant litigation. Under these circumstances, no expectation of privacy could reasonably exist with respect to either the information and facts contained in the Disclosure Statement, or to the Disclosure Statement itself.

■ Plaintiff's counsel has also suggested that there was an attorney-client relationship between the scrivener of the Disclosure Statement (either Mr. Alley or someone under his supervision) and the government. The Court finds no basis for such a contention. The government sought no advice from Mr. Alley, nor did Mr. Alley provide any advice to the government. The Disclosure Statement was not submitted by Mr. Alley to the government in connection with any attorney-client or potential attorney-client relationship, but rather because its submission was required by statute as a condition to maintaining this lawsuit.

## III. Work product

Any analysis of the work product doctrine must begin with Fed.R.Civ.P. 26(b)(3). It provides in relevant part that

> a party may obtain discovery of documents ... otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representa-

tive of a party concerning the litigation. Fed.R.Civ.P. 26(b)(3).

■ The Court has reviewed the Disclosure Statement *in camera* and is satisfied that it contains no mental impressions, conclusions, opinions or legal theories of an attorney. However, should plaintiff's counsel believe otherwise, I will permit redaction of those portions that counsel considers to be within the "mental impressions" restriction of Fed.R.Civ.P. 26(b)(3). The Court will then determine the propriety of any such redactions.

■ Under Rule 26(b)(3) factual work product, unlike mental impressions, is discoverable upon a showing that (a) the party seeking discovery has substantial need of the materials in the preparation of his case; and (b) he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *Natta v. Hogan*, 392 F.2d 686, 693 (10th Cir.1968); *Hamel v. General Motors Corp.*, 128 F.R.D. 281, 283–84 (D.Kan.1989); *Arney v. Geo. A. Hormel & Co.*, 53 F.R.D. 179, 181 (D.Minn.1971). In applying Rule 26(b)(3), the Court has broad discretion to determine whether factual work product should or should not be disclosed. *In re San Juan DuPont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1019 (1st Cir.1988); *In re Int'l Sys. & Controls Corp. Securities Litigation*, 693 F.2d 1235, 1240 (5th Cir.1982). Where, as here, the work product in question merely consists of a document reciting factual information provided by the client, the necessity for protection from discovery is weak, at best.

■ Based on the record before me, I find that the defendant has a substantial need for obtaining the Disclosure Statement, and that the defendant cannot obtain the substantial equivalent of this document by other means. The Court notes that, to this point, the plaintiff has provided little in the way of discovery which would reveal the factual basis for the allegations in the complaint. Given the trial date in January 1993, it is imperative that the defendant be made aware of the facts supporting the plaintiff's position as quickly as possible. The Disclosure Statement may well represent the best summary of these facts currently available.

There are additional, and perhaps more important reasons why the criteria for disclosure of factual work product are met here. Under the statute, Mr. Stone was required to make a full and complete disclosure of substantially all material evidence and information in his possession. In light of the 1986 amendments to § 3730, a failure to make a full and complete disclosure may no longer warrant dismissal of a *qui tam* action (*See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1040, 1054 (S.D.Ga.1990)); however, the matters which can be raised by the plaintiff may well be limited to those set out in the Disclosure Statement.

■ Further, it is clear that where the suit is based upon the public disclosure of allegations or transactions, the *qui tam* plaintiff must be the original source of the information. 31 U.S.C. § 3730(e)(4)(A). Additionally, it has been held that the private plaintiff must have directly or indirectly been a source to the entity that publicly disclosed the allegations on which the suit is based. *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 16 (2d Cir.1990). The original source requirement goes to the standing of the private plaintiff to maintain the action. *See United States v. Rockwell Intern. Corp.*, 730 F.Supp. 1031 (D.Colo.1990).

The threshold standing question relating to original source must be resolved largely on the basis of the knowledge of the private plaintiff at the time he first made disclosure of the facts supporting his claims, rather than on what he might know at the time discovery takes place in the *qui tam* suit. For example, if the facts contained in a private plaintiff's written disclosure had already been made public, the plaintiff may well find it impossible to meet the original source standard. Yet, without access to the plaintiff's disclosure statement, the defendant cannot make the critical comparison between the facts purportedly revealed by the plaintiff as an original

source and facts which may have previously been available for public consumption.

## IV. Regulatory and investigative files privilege

 The burden of establishing that documents are exempt from discovery falls squarely upon the party asserting privilege. *Pleasant Hill Bank v. United States*, 58 F.R.D. 97, 101 (W.D.Mo.1973) (applying this legal principle in the context of claims that materials were covered by various governmental privileges). The Court has serious doubts that any of the various governmental privileges, such as the regulatory or investigative files privilege, is applicable in this case or that plaintiff Stone has standing to raise these matters. However, I find it unnecessary to resolve these issues because any governmental privilege which might arguably have been pertinent has been waived.

The protection afforded to government regulatory and investigatory files is qualified rather than absolute. It may be defeated where production of documents is required in the interest of justice. Although courts have taken a variety of approaches in analyzing the question of when the qualified privilege is lost, I find that the balancing test applied in *F.D.I.C. v. Wise*, 139 F.R.D. 168 (D.Colo.1991) is best suited to weighing the competing interests. Under that test, a party impliedly waives any privilege if (a) assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party; (b) through the affirmative action, the asserting party has placed the protected information at issue by making it relevant to the case, and (c) application of the privilege would deny the opposing party access to information vital to its defense.

For the reasons previously discussed in Section III above, and based on the reasoning and holding in *F.D.I.C. v. Wise* I find and conclude that a waiver has occurred. The issues raised by plaintiff in this case make the information contained in the Disclosure Statement relevant and critical to a proper defense.

Based on the foregoing, it is hereby ORDERED that defendant's Motion to Compel the production of the Disclosure Statement is GRANTED.